418 F.3d 138
 Frank UZDAVINES, (deceased), Marie Uzdavines, (widow), Petitioner,
v.
WEEKS MARINE, INC., Respondent,
Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor, Interested-Party.
 Docket No. 03-40084.
 United States Court of Appeals, Second Circuit.
 Argued: May 13, 2004.
 Decided: August 3, 2005.
 
 COPYRIGHT MATERIAL OMITTED Philip J. Rooney, Israel, Adler, Ronca & Gucciardo, New York, NY, for Petitioner.
 Christopher J. Field, Field Womack & Kawczynski, South Amboy, NJ, for Respondent.
 Joshua T. Gillelan II, U.S. Dept. of Labor, Office of the Solicitor, Washington, DC, for Interested-Party.
 Before: FEINBERG and CABRANES, Circuit Judges, and KRAVITZ, District Judge.*
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 We consider here the proper scope of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., which provides compensation to land-based maritime employees. Marie Uzdavines, the widow of decedent Frank Uzdavines, petitions for review of an April 18, 2003 decision of the U.S. Department of Labor, Benefits Review Board (the "Board"), affirming an Administrative Law Judge's ("ALJ") disallowance of her claim against respondent Weeks Marine, Inc. ("Weeks") for recovery of death benefits. Petitioner filed a survivor's claim under the LHWCA, contending that her husband's death was caused by cancer that resulted, in part, from his exposure to asbestos while working for Weeks aboard a "bucket" dredge in 1990.
 
 
 2
 The Board concluded that, at the time of the decedent's alleged injury, he was a "member of a crew of [a] vessel" within the meaning of 33 U.S.C. § 902(3)(G).[1] Consequently, the Board affirmed the ALJ's finding that petitioner was excluded from coverage under the LHWCA and upheld the denial of petitioner's claim.
 
 
 3
 The Board also rejected petitioner's assertion that the doctrines of collateral and judicial estoppel preclude Weeks from "relitigating" the issue of the decedent's coverage under the LHWCA, despite the fact that Weeks had previously stipulated, during proceedings on an earlier disability claim, that it would "assume arguendo" that the decedent was covered under the LHWCA.
 
 
 4
 We heard argument in this matter on May 13, 2004 and held a disposition in abeyance pending the Supreme Court's resolution of Stewart v. Dutra Construction Co., No. 03-814. That case having been decided, ___ U.S. ___, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), we now deny the petition for review.
 
 BACKGROUND
 
 5
 The findings of fact by ALJ Robert D. Kaplan and the Board are summarized below. Between 1956 and 1991, the decedent was employed primarily as a welder at construction sites, shipyards, and factories, where he was exposed to asbestos. Beginning in October 1990, the decedent was employed by Weeks, first as a deck hand on a tugboat, and later as an oiler aboard a "bucket" dredge. The bucket dredge was a "large barge unit with a crane" that was located off-shore near the U.S. Navy shipyard at Staten Island. Pet'r's Br. at 6. The purpose of the dredge was "to deepen [navigation] channels, by removing debris from the bottom of the river; the crane and bucket scooped up the silt and placed it into a barge." Id. While the dredge relied primarily on a tugboat for its locomotion, it also had a limited capacity to move itself during the dredging process: "Steel spuds [were] raised, spun, and dropped again so that the dredge walked its way down the channel while depositing the silt onto a barge alongside." Id.
 
 
 6
 For a period of approximately three to four consecutive weeks ending December 9, 1990, the decedent served as an oiler aboard the dredge, working on "the break drums and friction drums which suspend the cable to lift up the bucket while dredging." Id. According to the decedent's testimony before ALJ Ralph A. Romano, the decedent's responsibilities as an oiler included "[w]orking around the engines, checking the oils" and "mak[ing] sure that everything was running properly." Hr'g Tr. of Apr. 15, 1996, at 38. The decedent discharged his responsibilities as an oiler aboard the dredge while the dredge was "in the middle of the water" and gradually moving across the channel. Id. at 37-38.
 
 
 7
 In May 1991, after having retired, the decedent filed a disability claim against Weeks seeking compensation under the LHWCA for asbestosis he had developed. The decedent claimed that he had been exposed to asbestos while working as an oiler on the dredge and that Weeks was solely responsible for compensation because it was the last employer to expose him to asbestos. See Travelers Ins. Co. v. Cardillo, 225 F.2d 137, 145 (2d Cir.1955) (concluding, under the LHWCA, that "the employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award"). During the administrative proceedings, the decedent admitted that he had entered into third-party settlements with asbestos manufacturers in 1991 without informing Weeks or securing its consent. Weeks then moved to dismiss the disability claim under 33 U.S.C. § 933(g)(1), which provides, in pertinent part: If the person entitled to compensation . . . enters into a settlement with a third person . . . for an amount less than the compensation to which the person . . . would be entitled under this [Act], the employer shall be liable for compensation . . . only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation . . . .
 
 
 8
 Id. (emphasis added). On July 31, 1996, ALJ Romano concluded that decedent had entered into settlements without the written approval required by the statute and dismissed the disability claim.
 
 
 9
 On appeal, the Board vacated ALJ Romano's dismissal and remanded for further review of the applicability of 33 U.S.C. § 933(g)(1). Specifically, the Board instructed that the disability claim could not be dismissed pursuant to § 933(g)(1) without a finding that: (1) the claimant was a "person entitled to compensation" under § 933(g)(1), and (2) the claimant settled "for an amount less than the compensation to which [he] . . . would be entitled under [the LHWCA]." On remand, the parties stipulated that this second condition was met. They also agreed in writing to "assum[e], arguendo" that the first condition was met. Petitioner acknowledges that Weeks's counsel stated, at the time of entering the stipulation, that the stipulation was "in no way binding with respect to any other claims brought against the employer." See Resp't's Letter Br. of May 17, 2004, Ex. 6. Based on these stipulations, ALJ Romano again dismissed the decedent's disability claim under § 933(g)(1), stating:
 
 
 10
 The parties have agreed that Claimant: is a "person entitled to compensation" under the Act; recovered a gross amount of $17,050 in third party settlements for the medical condition asserted in the instant claim; and would be entitled to compensation in an amount far more than such settlements. Accordingly, based upon [33 U.S.C. § 933(g)(1)], this claim is DISMISSED.
 
 
 11
 Decedent died on August 10, 1999. On September 27, 1999, petitioner brought a survivor's claim against Weeks seeking death benefits pursuant to 33 U.S.C. § 909.[2] Weeks moved for summary judgment partly on the basis that, as a "member of a crew of [a] vessel," the decedent was excluded from coverage under the LHWCA. 33 U.S.C. § 902(3)(G), see note 1, ante. On March 29, 2002, ALJ Kaplan determined that the decedent was in fact excluded from the LHWCA's coverage, and dismissed the claim. The Board affirmed, and petitioner now seeks review by this Court.
 
 
 12
 Petitioner presents two arguments for our review. She asserts (1) that the Board erred in concluding that the decedent was a "member of a crew of [a] vessel" within the meaning of § 902(3)(G), and therefore excluded from coverage under the LHWCA, and (2) that because Weeks stipulated during the disability claim proceedings before ALJ Romano that the LHWCA applied to the decedent, Weeks is now precluded by the doctrines of collateral and judicial estoppel from "relitigating" the issue in the context of petitioner's survivor's claim.
 
 DISCUSSION
 I. Standard of review
 
 13
 Our review of the Board's decision is limited to "whether the [Board] made any errors of law and whether [an] ALJ's findings of fact, in light of the entire record, are supported by substantial evidence." Sealand Terminals, Inc. v. Gasparic, 7 F.3d 321, 323 (2d Cir.1993) (quoting Crawford v. Dir., Office of Workers' Comp., 932 F.2d 152, 154 (2d Cir.1991)) (internal quotation marks omitted).
 
 
 14
 The first question — whether the decedent was a "member of a crew" excluded from the LHWCA — is a mixed question of law and fact. Chandris, Inc. v. Latsis, 515 U.S. 347, 369, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). The Supreme Court has explained:
 
 
 15
 Because statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard. On the other hand, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a `member of a crew,' it is a question [of fact]."
 
 
 16
 Id. (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)) (internal citation omitted). We review "mixed questions of law and fact either de novo or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." United States v. Selioutsky, 409 F.3d 114, 119 (2d Cir.2005).
 
 
 17
 The second question — whether the doctrines of collateral and judicial estoppel precluded the Board's decision — is a pure question of law, which we review de novo. See id.
 
 
 18
 II. Whether the decedent was a "member of a crew of any vessel"
 
 
 19
 The LHWCA and the Jones Act, 46 U.S.C. § 740 et seq. are mutually exclusive compensation regimes for injured maritime workers. The Jones Act provides for "an action for damages at law" for "any seaman who[,] . . . in the course of his employment," sustains a personal injury. 46 U.S.C.App. § 688(a). By contrast, the LHWCA provides compensation for injuries sustained by land-based maritime workers and expressly excludes "a master or member of a crew of any vessel," i.e. any seaman, from coverage. See 33 U.S.C. § 902(3)(G), 905(a). Accordingly, if a person is a "seaman" for the purposes of the Jones Act, he is excluded from coverage under the LHWCA, and cases interpreting the scope of the term "seaman" under the Jones Act necessarily interpret the scope of the LHWCA's exclusion of a "master or member of a crew of any vessel." Chandris, 515 U.S. at 355-56, 115 S.Ct. 2172. Conversely, it is "`odd but true that the key requirement for Jones Act coverage now appears in [the LHWCA].'" Id. (quoting Wilander, 498 U.S. at 347, 111 S.Ct. 807).
 
 
 20
 The Supreme Court has recognized that there are two requirements for "seaman" status: (1) "an employee's duties must `contribut[e] to the function of the vessel or to the accomplishment of its mission,'" and (2) the employee "must have a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature." Id. at 368, 115 S.Ct. 2172 (quoting Wilander, 498 U.S. at 355, 111 S.Ct. 807) (alteration in original, internal quotation marks omitted).
 
 
 21
 Petitioner conceded below, and does not now contest, that her husband satisfied the first requirement — that is, he "contribut[ed] to the function of the [purported] vessel or to the accomplishment of its mission." Upon review, petitioner initially maintained that the decedent did not meet the second requirement in two ways: she argued (1) that the dredge on which her late husband worked was not a "vessel in navigation," and (2) that even if it was, his connection to the dredge was not "substantial in terms of both its duration and its nature." In light of the Supreme Court's recent decision in Stewart v. Dutra Construction Co., ___ U.S. ___, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), however, petitioner now concedes that "a structure such as a bucket dredge involved herein is, in fact, a vessel." Pet'r's Letter Br. of Mar. 21, 2005, at 2. Nonetheless, because the Supreme Court's ruling revised our Court's previous test for "vessel" status under the LHWCA, we apply the holding in Stewart to the facts of this case.
 
 
 22
 A. "Vessel in navigation"
 
 
 23
 In Stewart, the Supreme Court considered "whether a dredge is a `vessel' under the [LHWCA]," and concluded that it is. 125 S.Ct. at 1121. To qualify as a vessel, a ship must be "`used, or capable of being used, as a means of transportation on water.'" Id. at 1124 (quoting Rev. Stat. § 3, codified at 1 U.S.C. § 3). While "structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time," id. at 1128, "permanently moored[,] or otherwise rendered practically incapable of transportation or movement," id. at 1127, a ship does not move in and out of "vessel" status because it is temporarily "at anchor, docked . . . or berthed for minor repairs," id. Likewise, "a watercraft [does not] pass in and out of Jones Act coverage depending on whether it was moving at the time of the accident." Id. at 1128. Provided that at the time of the accident a watercraft's use as a means of transportation remains a "practical possibility," rather than "merely a theoretical one," it qualifies as a "vessel in navigation" for the purposes of LHWCA coverage. Id.
 
 
 24
 Applying these tests to the dredge at issue in Stewart, the Supreme Court emphasized that the dredge "was not only `capable of being used' to transport equipment and workers over water — it was used to transport those things. Indeed, it could not have dug the Ted Williams Tunnel had it been unable to traverse the Boston Harbor, carrying with it workers like Stewart." Id. at 1128. The Court added that "[d]espite the seeming incongruity of grouping dredges alongside more traditional seafaring vessels under the [LHWCA and Jones Act], Congress and the courts have long done precisely that." Id. at 1129.
 
 
 25
 In all material respects, the bucket dredge in the instant case is indistinguishable from the dredge at issue in Stewart: both have "a clamshell bucket . . . suspended beneath the water," and both move "long distances by tugboat" and navigate "short distances by manipulating . . . anchors and cables." Id. at 1121. In addition to sharing these physical features, the dredge on which the decedent worked was actively used to deepen navigation channels in the vicinity of Staten Island and could not have performed this task without the ability to transport equipment and workers across navigable waters.
 
 
 26
 The Supreme Court's decision in Stewart supersedes the three-part test we developed in Tonnesen v. Yonkers Contracting Co., 82 F.3d 30 (2d Cir.1996), which stated that a floating structure would not qualify as a "vessel in navigation" if, inter alia, the "transportation function performed by the [purported vessel] was merely incidental to its primary purpose of serving as a work platform." Id. at 36. On the basis of Stewart, we conclude that the test announced in Tonnesen no longer applies and that the bucket dredge on which the decedent worked is properly classified as a "vessel" for purposes of the LHWCA.
 
 B. "Substantial" connection to a vessel
 
 27
 Although petitioner does not dispute that, for a period of three or four consecutive weeks, the decedent worked exclusively as an oiler aboard a dredge that was (1) located "in the middle of the water" and (2) moved across the channel, Hr'g Tr. of Apr. 15, 1996, at 37-38, she nonetheless challenges ALJ Kaplan's determination that the decedent had a "substantial" connection to the dredge. Petitioner concedes that "under certain circumstances, four weeks of work could be a substantial connection to a vessel," Pet'r's Br. at 13, but contends that ALJ Kaplan erred principally by failing to consider the decedent's work history — which included predominantly land-based work over the course of thirty-five years — prior to his work on the dredge.
 
 
 28
 As a preliminary matter, we conclude that ALJ Kaplan need not have considered the decedent's prior work history. The Supreme Court has unequivocally stated that "[t]here [is] no . . . need to examine the nature of an employee's duties with prior employers," Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 557, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), because this "would undermine the interests of employers and maritime workers alike in being able to predict who will be covered by the Jones Act . . . before a particular work day begins," id. at 558 (internal quotation marks omitted). Therefore, if an employee "receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." Chandris, 515 U.S. at 372, 115 S.Ct. 2172 (emphasis added). The Supreme Court specifically contemplated "situations in which someone who had worked for years in an employer's shoreside headquarters is then reassigned to a ship in a . . . seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of the vessel." Id. In such circumstances — which strongly resemble those of the decedent's employment aboard the dredge in the instant case — the Court concluded that "[s]uch a person should not be denied seaman status if injured shortly after the reassignment." Id.
 
 
 29
 Based on the record before us, we hold that, during the time period that the decedent worked aboard the dredge, he established a connection to the vessel that was "substantial in terms of both its duration and its nature" rather than merely "transitory or sporadic." Chandris, 515 U.S. at 368, 115 S.Ct. 2172. Bearing in mind that "[t]he inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea," Papai, 520 U.S. at 555, 117 S.Ct. 1535, we particularly note that the decedent worked aboard an active vessel, maintaining the ship's engines so that it could perform the task of transporting equipment and personnel across a navigable waterway. Cf. id. at 559, 117 S.Ct. 1535 (finding no substantial connection where employee "was hired for one day to paint [a] vessel at dockside and he was not going to sail with the vessel after he finished painting it"); O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 64 (2d Cir.2002) (finding no substantial connection where employee performed tasks aboard a barge that was at all times "secured to [a] pier").
 
 
 30
 With respect to petitioner's final argument — that we should disregard the decedent's employment aboard the dredge because this employment was temporary, rather than "of indefinite or permanent duration," see Pet'r's Letter Br. of Mar. 21, 2005, at 5 — even if we were to perceive a distinction between temporary or "fill-in" work and more permanent kinds of employment, the coverage of the LHWCA does not depend on any such distinction, nor does petitioner point to any authority suggesting that it does.
 
 
 31
 We therefore find no error in the legal reasoning of either ALJ Kaplan or the Board, and we affirm their findings that the decedent had a "substantial" connection to a vessel at the time of his injury. In our view, both the ALJ and the Board properly determined, in light of the considerable evidence in the record, that the decedent had a connection to the dredge that was "substantial in both its duration and its nature."
 
 III. Estoppel
 A. Collateral estoppel
 
 32
 Petitioner next argues that Weeks is collaterally estopped from "relitigating" the coverage of the LHWCA because (1) Weeks stipulated during the disability proceedings before ALJ Romano that the decedent was covered by the LHWCA, and (2) ALJ Romano relied on that stipulation in dismissing the decedent's disability claim.
 
 
 33
 Collateral estoppel, or issue preclusion, applies where: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir.1998) (quoting Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir.1997)) (internal quotation marks omitted).
 
 
 34
 ALJ Kaplan and the Board concluded that collateral estoppel did not apply to the instant case because the issue of whether the decedent was covered under the LHWCA was not "actually litigated" before ALJ Romano during the disability proceedings. Instead, the decedent and Weeks merely submitted a stipulation assuming that coverage existed for the narrow purpose of allowing ALJ Romano to resolve Weeks' motion to dismiss under § 933(g), in accordance with the Board's remand. Further, it is undisputed that counsel for Weeks stated, at the time he entered the stipulation, that the "stipulation [was] in no way binding with respect to any other claims brought against the employer." Resp't's Letter Br. of May 17, 2004, Ex. 6. While ALJ Romano relied on the parties' limited stipulation that the decedent could be considered a "person entitled to compensation under the [LHWCA]," he made no express findings that the decedent was not a "seaman," or that the decedent fell within the coverage of the LHWCA.
 
 
 35
 Most courts have held that a fact established in prior litigation by stipulation, rather than by judicial resolution, has not been "actually litigated." See, e.g., United States v. Botefuhr, 309 F.3d 1263, 1282-83 (10th Cir.2002); United States v. Young, 804 F.2d 116, 118 (8th Cir.1986); see also 18 James Wm. Moore et al., Moore's Federal Practice § 132.03[2][h][i] (3d ed.2005) (collecting cases). However, we have specified that where parties intend a stipulation to be binding in future litigation, issues to which the parties have stipulated will be considered "actually litigated" for collateral estoppel purposes. See Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 369 n. 4 (2d Cir.1995); see also Red Lake Band v. United States, 221 Ct.Cl. 325, 607 F.2d 930, 934 (1979) ("[A]n issue is not `actually litigated' for purposes of collateral estoppel unless the parties to the stipulation manifest an intent to be bound in a subsequent action."); cf. Otherson v. Dep't of Justice, 711 F.2d 267, 274 n. 6 (D.C.Cir.1983) ("[Issue] [p]reclusion is appropriate when the stipulation clearly manifests the parties' intent to be bound in future actions.").
 
 
 36
 In the instant case, the parties expressed a mutual understanding that the stipulation would not be binding on future claims against Weeks. The written stipulation only "assum[ed], arguendo" that coverage existed, and counsel for Weeks clearly stated that the stipulation was limited to the decedent's initial disability claim. Therefore, the Board was not precluded from resolving whether the decedent was covered by the LHWCA for the purposes of addressing petitioner's separate survivor's claim for death benefits.
 
 
 37
 Finally, petitioner's assertion that collateral estoppel applies suggests that Weeks should have litigated the issue of LHWCA coverage before the ALJ, even though the Board had already determined that the decedent's claim — assuming that it was properly raised under the LHWCA — would be dismissed on other grounds. In such circumstances, it is appropriate for parties to stipulate to coverage for the purpose of a single proceeding while reserving the right to "actually litigate" the question of jurisdiction in future proceedings.
 
 B. Judicial estoppel
 
 38
 Petitioner also briefly argues that "judicial estoppel" offers a basis, independent of collateral estoppel, for vacating the Board's decision. Pet'r's Br. at 34-35. The equitable doctrine of judicial estoppel provides that, "`[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)). The Supreme Court, exercising its original jurisdiction over a boundary dispute between New Hampshire and Maine, identified "several factors" that "typically inform the decision whether to apply the doctrine in a particular case":
 
 
 39
 First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
 
 
 40
 Id. at 750-51, 121 S.Ct. 1808 (internal quotation marks and citations omitted). In "enumerating these factors," the Court cautioned that it was not establishing "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. The Court concluded that judicial estoppel applied to prevent New Hampshire from re-litigating its eastern boundary with Maine, where New Hampshire would be taking a position inconsistent with a consent decree it entered into in 1977. Id. at 756, 121 S.Ct. 1808.
 
 
 41
 Our circuit has consistently limited the application of judicial estoppel to "situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." Stichting v. Schreiber, 407 F.3d 34, 45 (2d Cir.2005); Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir.2004) (same); Adler v. Pataki, 185 F.3d 35, 41 n. 3 (2d Cir.1999) (same). Moreover, we "limit[] the doctrine of judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." Simon v. Safelite Glass Corp., 128 F.3d 68, 72 (2d Cir.1997).
 
 
 42
 Judicial estoppel cannot be applied against Weeks in the instant case. The parties' stipulation concerning the scope of the LHWCA was limited to the decedent's disability claim, and therefore Weeks is not taking an "inconsistent" position by now asserting, as a defense to petitioner's survivor's claim, that the decedent was not covered. Furthermore, the parties' stipulation did not confer "an unfair advantage" on Weeks, or impose "an unfair detriment" on the decedent, New Hampshire, 532 U.S. at 751, 121 S.Ct. 1808; the decedent's disability claim would have been dismissed in any event — whether based on his settlement of third-party claims without obtaining written approval from Weeks, or based on his exclusion from the LHWCA. Perhaps in the interests of judicial economy and in anticipation that dismissal was inevitable under 33 U.S.C. § 933(g)(1), the parties stipulated to LHWCA coverage. No one — not ALJ Romano, not ALJ Kaplan, not the Board, and not petitioner — was "misled" by the parties' stipulation in the original disability claim proceeding, and the judicial integrity of the Board's determination was not compromised by the parties' stipulation. Under these circumstances, equity does not suggest, much less require, that we hold that the decedent was covered under the LHWCA.
 
 CONCLUSION
 In sum, we hold that:
 
 43
 (1) the decedent was properly classified as a "member of a crew of [a] vessel" within the meaning of 33 U.S.C. § 902(3)(G) and thereby excluded from coverage under the LHWCA because (a) at the time of his alleged injury, he "contributed to the function" of a bucket dredge, which qualifies as a vessel, and (b) his connection to the dredge was "substantial in both its duration and its nature"; and
 
 
 44
 (2) in the present circumstances, petitioner may not invoke the doctrines of collateral and judicial estoppel to preclude respondent from "relitigating" the issue of the decedent's coverage under the LHWCA.
 
 
 45
 For the reasons stated above, we deny the petition for review.
 
 
 
 Notes:
 
 
 *
 The Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, sitting by designation
 
 
 [1]
 33 U.S.C. § 902(3) provides, in relevant part:
 The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker, but such term does not include. . . a master or member of a crew of any vessel.
 
 
 [2]
 33 U.S.C. § 909 provides, in relevant part:
 If the injury causes death, the compensation therefore shall be known as a death benefit and shall be payable . . . for the benefit of . . . a widow or widower . . . [in the amount of] 50 per centum of the average wages of the deceased, during widowhood, or dependent widowerhood, with two years' compensation in one sum upon remarriage . . . .