**UNITED STATES of America**
Respondent,

v.

**Joseph MARTIN, Defendant–Petitioner.**

**Docket Nos. 04–1600 CR(L),
04–2344(CON).**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 9, 2004.

Decided: Aug. 4, 2005.

Filed: Sept. 2, 2005.

Decided: Oct. 3, 2005.

Steven Jay Harfenist, Friedman, Harfenist, Langer & Kraut, Lake Success, NY, for Defendant–Petitioner.

Bonnie S. Klapper, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Cecil C. Scott, Assistant United States Attorney, on the brief on appeal), Brooklyn, NY, for Respondent.

Before: WALKER, Chief Judge,
POOLER and WESLEY, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

ON PETITION FOR REHEARING

For the reasons stated below, defendant-appellant Joseph Martin's petition for rehearing is denied.

Martin argues that we could not find probable cause because (1) the redacted affidavit "contains no particularized information regarding whether Martin, or the e-mail account registered to his home, possessed child pornography," as required by

*Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), and (2) it is error to conclude that the primary purpose of the "girls12–16" e-group was to trade child pornography because the site also supported the exchange of textual messages and therefore allowed its members to engage in protected speech. Upon review, we adhere to our view that probable cause existed because there was a fair probability that contraband or evidence, fruits, or instrumentalities of a crime would be found at Martin's residence.

After we announced our decision in this case, another panel of this Court—in *United States v. Coreas,* 419 F.3d 151 (2d Cir. 2005)—addressed the validity of a related search warrant, which was also executed in connection with "Operation Candyman." The *Coreas* panel, however, was presented with the separate question whether the redacted affidavit was sufficient to support a showing of probable cause where the defendant was a member of the "Candyman" e-group, not the "girls12–16" e-group. And the *Coreas* panel's review was limited to those features associated with the Candyman site, including its far less descriptive title and welcome message.[1]

The *Coreas* panel recognized these distinctions:

Arguably, *Martin* might be distinguished from the instant case on the ground that the defendant there had joined a different group, girls12–16. Even a first-time visitor, according to the *Martin* majority, would have instantly recognized the unlawful nature of girls12–16, since its "welcome message," longer and more detailed than Candyman's, "unabashedly announced that its essential purpose was to trade child pornography."

*Coreas,* 419 F.3d at 157. Nonetheless, the *Coreas* panel determined that this panel "did not ... regard such distinctions as decisive" because we noted, in a separate

---

1. The welcome message to the Candyman e-group stated:

   This group is for People who love kids. You can post any type of messages you like too [sic] or any type of pics and vids you like too [sic]. P.S. IF WE ALL WORK TOGETHER WE WILL HAVE THE BEST GROUP ON THE NET.

   In contrast, the welcome message for the girls12–16 e-group stated:

   Hi all, This group is for all those ho [sic] appreciate the young female in here [sic] finest form. Watching her develop and grow is like poetry in motioon [sic], to an age where she takes an interest in the joys and pleasures of sex. There is probably nothing more stimulating than watching a young teen girl discover the pleasures of the orgasm. The joy of feeling like she is actually coming into womanhood. It's an age where they have no preconditions about anything, just pure opennes [sic]. What a joy to be a part of that wonderful experience and to watch the development of this perfect form. This is the place to be if you love 11 to 16 yr olds. You can share experiences with others, share your views and opinions quite freely without censorship. You can share all kinds of other information as well regarding—your current model: if you are a photographer. Where the best place to meet gitls [sic] is. The difficulties you experience in your quest. The best way to chat up. Good places to pick girls up. Girls you would like to share with others. The choice is all yours. Welcome home! Post videos and photographs...and how about your true life experiences with them so that other viewers can paint a mental picture andin [sic] some ways share the experience with you. You could connect with others from the same country as you and get together sociall [sic] if you wish. The choice is all yours. How about a model resource for photographers? It's all up to you and is only limited by your own imaginations. Membership is open to anyone, but you will need to post something. Mybe [sic] a little bit about yourself/what your interests are (specifically), your age, location ... and a pic or vid would be good to [sic]. By doing this other members (or potential members) with the same interest may then contact you if you wish them to.

part of our opinion, that the *internal* operational characteristics of the two sites were indistinct. *Id.* The *Coreas* panel concluded that we viewed "the differences between the websites as immaterial and regarded the Candyman welcome message as explicit enough to warrant an inference of unlawful purpose." *Id.* Based in part on this perception of our holding, the *Coreas* panel held that the *Martin* decision compelled it to uphold the denial of suppression of the evidence of activity on the Candyman site. *Id.* at 159.

Although the Candyman welcome message was not before this panel, we need to clarify that we do not view the differences between the two welcome messages as "immaterial." To the contrary, the girls12–16 welcome message was an integral component of our probable cause determination.

▬ As we explained in our prior decision, the probable cause standard simply requires a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate] ..., there is a fair probability that contraband or evidence of a crime will be found in a particular case." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Two interrelated points, however, are worth emphasizing. First, probable cause only requires " 'the probability, and not a prima facie showing, of criminal activity.' " *Id.* at 235, 103 S.Ct. 2317 (quoting *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)). Second, " '[o]nce it is established that probable cause exists to believe a federal crime has been committed a warrant may issue for the search of *any* property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime.' " *Zurcher v. Stanford Daily,* 436 U.S. 547, 558, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)

(alteration in the original) (emphasis added) (quoting *United States v. Mfrs. Nat'l Bank of Detroit,* 536 F.2d 699, 703 (6th Cir.1976)). Thus, "it is untenable to conclude that property may not be searched unless its occupant is reasonably suspected of a crime and is subject to arrest." *Id.* at 559, 98 S.Ct. 1970. Rather, "valid warrants to search property may be issued when it is satisfactorily demonstrated to the magistrate that fruits, instrumentalities, or evidence of crime is located on the premises." *Id.*

With these standards in mind, we turn to the two principal arguments advanced by Martin in his petition for rehearing: first, that because the e-group supported lawful functions, we could not conclude that the group's primary purpose was to facilitate the trade of child pornography; and second, that the redacted affidavit cannot support a finding of probable cause because it "contains no particularized information regarding whether Martin, or the e-mail account registered to his home, possessed child pornography."

▬ As our earlier decision held, we have no difficulty concluding from the redacted affidavit that the primary purpose of the girls12–16 e-group was to facilitate the generation, inventory, and exchange of child pornography. The redacted affidavit states that individuals that sought membership in the e-group were presented with the name of the group and its detailed welcome message, which unabashedly announced that the group's essential purpose was to trade child pornography, and that the e-group's members were actively uploading and downloading child pornography on the site and exchanging e-mail with illicit attachments.

The fact that this technology could also have been put to innocent or protected uses does not alter our conclusion. Thus, the fact that the majority of e-mail ex-

changed on the site was only textual does not diminish the fact that a significant quantity of e-mail contained image-files of child pornography, and that hundreds of picture- and video-files were readily available for download on the girls12–16 e-group site. *Cf. United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985) ("The fact that an innocent explanation may be consistent with the facts alleged, however, does not negate probable cause.").

■ In any event, we cannot accept that the level of wholly textual e-mail somehow suggests that the group's website was being used for predominantly lawful, or even protected, activities. All text is not protected by the First Amendment. Text-based e-mail that helps others "meet," "chat up," and sexually exploit children is not protected speech. And the First Amendment offers no protection to those that use e-mail to promote the exchange of child pornography in violation of the statute at issue in this case. 18 U.S.C. § 2252A(b)(1) (proscribing attempt and conspiracy). Moreover, the redacted affidavit and record before us on this appeal establish that the vast majority of textual messages sent to the members of the e-group were generated automatically each time a new file was uploaded onto the site. The purpose of this function was straightforward: it was to inform members of "the name of the file, the date and the time that the file was posted, the location of the file on the [girls12–16] E-group web site, and the e-mail address of the individual who posted it." Berglas Aff. at 19, 22–23. Far from suggesting a robust forum for protected speech, these e-mails alerted members to new child pornography available for download and are themselves powerful evidence of criminal activity. 18 U.S.C. § 2252A(a)(3) (prohibiting the reproduction of child pornography for distribution by computer).

■ We also have no difficulty concluding that the activity of subscribing to the girls12–16 e-group, after being prompted by its name and welcome message, and adhering to membership despite the site's contents, was sufficient to support a finding of probable cause. In reaching such a finding, we need not conclude that there was probable cause to arrest Martin; we need only conclude that there was a fair probability that the premises to be searched contained contraband or evidence, fruits, or instrumentalities of a crime. *Zurcher,* 436 U.S. at 558–59, 98 S.Ct. 1970.

In this case, the redacted affidavit established that individuals that sought membership in the e-group were presented with the name of the group and its detailed welcome message; that members of the e-group were actively uploading and downloading child pornography on the site and exchanging e-mail with illicit attachments; and that a large majority of the text-only e-mail was generated automatically as a means to inform members that new child pornography had been uploaded onto the site. Finally, the affidavit stated that an e-mail address associated with Martin's household (Joeym@optonline.net) was enlisted and remained on the membership rolls until the group was suspended by Yahoo!. From these statements, a reasonable magistrate could conclude that there was a fair probability that contraband or evidence, fruits, or instrumentalities of a crime would be found at the premises where a computer was used to access the girls12–16 site.

The facts in *Martin* are analogous to joining a collective organization that may happen to include members who advocate for the legalization of marijuana, but whose creed, which is carefully iterated on a plaque adjacent to the entranceway, provides that the collective is a means to

generate, inventory, and barter and exchange marijuana. In such a setting, a reasonable magistrate would have no difficulty in finding that there is a fair probability that each member's store within the collective contains marijuana or evidence, fruits, or instrumentalities of a crime associated with the production or exchange of marijuana. The girls12–16 e-group is no different. Each member affirmatively joined a collective designed to facilitate the trade of child pornography; it stands to reason that each member's store—i.e., each member's networked computer—was likely to contain child pornography or evidence, fruits, or instrumentalities of the exchange of child pornography.

*Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), does not compel a contrary result. In *Ybarra,* the police received information from a confidential informant that the bartender at a public tavern was in possession of heroin packets. *Id.* at 87–88, 100 S.Ct. 338. Acting on the basis of this information, the police obtained a warrant authorizing them to search the bartender and the tavern. *Id.* at 88, 100 S.Ct. 338. Upon entering the tavern, however, the police also conducted "frisk" searches of the patrons, one of whom was Ybarra. When Ybarra was frisked, the police discovered a cigarette pack containing six tinfoil packets of heroin. *Id.* at 89, 100 S.Ct. 338. Ybarra was subsequently indicted and found guilty of unlawful possession of a controlled substance. *Id.*

The Supreme Court held that the police lacked probable cause to search Ybarra. The Court stressed that the only thing the police knew about Ybarra upon entering the tavern and up to the point when he was searched was that he was present in the tavern, along with others, at a time when the police had a reasonable basis to believe that the bartender

had heroin to sell. This alone was insufficient to constitute probable cause. *United States v. Patrick,* 899 F.2d 169, 171 (2d Cir.1990) (citation omitted). As the Supreme Court explained, "a person's mere propinquity to others independently suspected of criminal activity does not, *without more,* give rise to probable cause to search that person." *Ybarra,* 444 U.S. at 91, 100 S.Ct. 338 (emphasis added).

The website in the instant case, however, is quite different from the public tavern in *Ybarra.* An e-mail associated with Martin's residence was used to gain access to a website whose primary purpose was to facilitate the exchange of child pornography. Thus, unlike the patrons in *Ybarra,* who happened to find themselves in a public tavern during a police raid, anyone joining the girls12–16 site was on notice that the site was an active marketplace for the illicit trade of child pornography. Under these circumstances, the district court's refusal to suppress the child pornography downloaded onto Martin's computer was not error.

Judge Pooler's dissent relies on the view that *any* possibility of lawful activity negates probable cause. She also takes the position that the girls12–16 e-group cannot have an unlawful primary purpose where there are lawful secondary uses for the group's site. We disagree with both of these arguments. As the phrase implies, probable cause deals with probabilities, not certainties. Under Judge Pooler's standard, a search warrant could only issue where a magistrate is satisfied that the police will necessarily find contraband or evidence, fruits, or instrumentalities of a crime. This is plainly not the standard for probable cause.

The internet is not a safe haven for illicit conduct. Rather, it is a digital community where the zeros and ones that translate into visible and audible expressions have

legal consequences. Although we will be diligent to guard against unlawful searches and seizures, even at the digital divide, the internet does not present an exception to established principles of probable cause.

For the foregoing reasons, and for the reasons stated in our original opinion, Martin's petition for rehearing is DENIED.

POOLER, Circuit Judge, dissenting.

## ON PETITION FOR REHEARING

I would grant rehearing in this case for the reasons stated originally in my dissent, *United States v. Martin,* 418 F.3d 148, 158–64 (2d Cir.2005), and those stated in the unanimous opinion in *United States v. Coreas,* 419 F.3d 151 (2d Cir.2005). The majority finds comfort in the distinction between the welcome messages in *Martin* and *Coreas.* I believe that this is a distinction without a difference. The majority apparently views the distinction between the welcome messages as important because, in their view, the girls12–16 message demonstrates that the "primary purpose" of the group is to exchange illegal visual depictions while the Candyman message is less clear as to the group's "primary purpose." This is both irrelevant and factually incorrect.

### I. Probable cause cannot be based on mere group membership

As I explained in my original dissent, after redacting Agent Binney's false statement that all members of girls12–16 automatically received emails containing illegal visual depictions, the affidavit supporting the warrant application contains no allegation that Martin actually downloaded, or even viewed, any illegal visual depictions. *Martin,* 418 F.3d at 160. Without some evidence that a specific individual possesses fruits or instrumentalities of a crime, probable cause cannot exist to search that person's home. To make up for this lack of evidence, the majority relies on membership in an E-group whose "primary purpose" is allegedly illegal to create probable cause to search any member of the group, no matter how short or inactive their membership.

Basing probable cause solely on group membership runs counter to the well-established rule in *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). *Ybarra* clearly held that probable cause must be particularized with respect to the person searched. *Id.* The majority's attempt to distinguish *Ybarra* relies on the same flawed "primary purpose" analysis used throughout the opinion. *Ybarra* never mentions the concept of "primary purpose"; instead it categorically rejects probable cause based solely on association and imposes a strict requirement of individualized suspicion. *Id.*

The majority cites no case supporting the alarming proposition that probable cause may be based solely on group membership whenever the group's "primary purpose" is illegal, rather than on, as has been required in the past, particularized information about the person or place to be searched. Such an unprecedented standard will "tend to dilute the First Amendment's protection against guilt by association and diminish the Fourth Amendment's focus on particularity and on protection of the privacy of the individual to be searched." *Coreas,* 419 F.3d at 158. In addition, this standard is impractical because the "primary purpose" of an organization may frequently be unclear, even to its own members.

Requiring particularized evidence will not hamper government enforcement of laws against child pornography. This is especially true in this case, since the government could easily have obtained information about a particular subscriber by

obtaining the user's email preferences from Yahoo! or monitoring use of the group. *Coreas,* 419 F.3d at 158; *Martin,* 418 F.3d at 160 n. 10 (Pooler, J., dissenting) (citing *United States v. Perez,* 247 F.Supp.2d 459, 483 (S.D.N.Y.2003)).

The majority's analogy to a marijuana collective is inapposite. The hypothetical posits that the collective is a "means to generate, inventory, and barter and exchange marijuana." This language, like so much of the majority opinion, is not precise. It is unclear what it means to "generate" or "inventory" marijuana and whether such activities are illegal. If the analogy is intended to describe an organization engaged solely in buying and selling marijuana in a jurisdiction where such activity is illegal under all circumstances and which excludes those who only want to discuss marijuana, then the collective would be involved only in illegal activity. An organization engaged solely in illegal activity such that the organization "becomes wholly illegitimate" presents a different case than the one before us and is more analogous to organized crime. *United States v. Rubio,* 727 F.2d 786, 793–94 (9th Cir.1984); *see also Coreas,* 419 F.3d at 158 (citing *United States v. Scarfo,* 711 F.Supp. 1315, 1339 (E.D.Pa.1989), *aff'd sub nom. United States v. Pungitore,* 910 F.2d 1084 (3d Cir.1990)). Furthermore, in the cases that base probable cause on membership in a wholly illegal organization, the underlying indictment is generally for conspiracy, making the membership itself relevant to the crime. *Martin,* 418 F.3d at 161 n. 12 (Pooler, J., dissenting) (citing *United States v. Killip,* 819 F.2d 1542, 1550 (10th Cir.1987); *Rubio,* 727 F.2d at 792–93). A more apt analogy to this case would exist if the collective also facilitated the discussion of legalizing marijuana or experiences with marijuana use. In addition, marijuana does not require the kind of line drawing presented by the indecent material at issue here, where some depictions are illegal child pornography, while others are merely child erotica. Analogizing child pornography to marijuana is simply unhelpful.

Since I continue to believe that individualized information, rather than mere membership in an organization whose "primary purpose" is illegal, is necessary to support a finding of probable cause, the distinction the majority attempts to draw between the welcome messages is unavailing.

## II. The girls12–16 welcome message does not establish that the "primary purpose" of the group is illegal

It is far from clear, based on either the welcome message or other aspects of the group, that the "primary purpose" of girls12–16 was to trade illegal visual depictions. Defining an organization's "primary purpose" is difficult given that any given member may understand that purpose differently, and is particularly difficult in this case because of the unstructured nature of E-groups. The welcome message of girls12–16 actually emphasizes many of the legal functions of the group. It suggests, among other things, that the group be used to "share experiences with others, share your views and opinions quite freely without censorship," "connect with others ... and get together sociall [sic]." While it also suggests posting pictures or video, there is no way to know whether this was intended to include child pornography, or simply child erotica, which while distasteful, is not illegal. In fact, child erotica constituted almost eighty five percent of the pictures emailed to Agent Binney while he was a member of the group, making it far more prevalent on the site than illegal child pornography. Berglas Aff. at 24.

The mixed uses described by the welcome message are confirmed by the fact that a number of legal and constitutionally protected activities could and did take place within the E-group. The group supported surveys, chatting, and textual postings. Berglas Aff. at 19. As discussed above, many of the pictures posted on the site were child erotica, not child pornography. Since child pornography was contained in less than eight percent of the emails sent to members of girls12–16, exchanging child pornography can hardly be considered the primary purpose of the group. The majority argues that the text based emails, which made up the majority of the emails, were merely a means to alert users that new pictures had been posted, majority op. at 8–9, but, even considering only the *pictures* that were emailed to users, the vast majority were legal child erotica, not illegal child pornography. Berglas Aff. at 24. It is therefore stretching the facts to conclude that the primary purpose of the group was to exchange illegal visual depictions. Despite this, the majority fails to even acknowledge the legal uses of girls12–16 and the very narrow nature of the crime at issue here.

Finally, although the *Coreas* panel considered the distinction between the welcome messages, they did not think they could distinguish *Martin* on this basis. 419 F.3d at 157. The internal structure of the two groups was essentially the same, and both welcome messages contained invitations to post pictures as well as engage in free speech. *Id.* Similarly, there was no evidence in either case that the particular defendant had actually downloaded any illegal visual depictions. *Id.* at 156. Thus, as the *Coreas* panel recognized, all the relevant facts were the same, despite the more explicit welcome message for girls12–16. The unavailing distinction the majority proposes would not remove the constraint the *Coreas* panel believed forced it to wrongly decide that case.

*Conclusion*

The majority is correct that "the internet does not present an exception to established principles of probable cause," but by relying solely on the fact of membership in a group whose "primary purpose" is allegedly illegal, that is exactly what they have done in this case. For the reasons stated above, in my original dissent, and the unanimous opinion in *Coreas*, I respectfully dissent.