**UNITED STATES of America, Respondent,**

v.

**Joseph MARTIN, Defendant–Petitioner.**

**United States of America, Respondent,**

v.

**Willie Coreas, Defendant–Petitioner.**

**Docket Nos. 04–1600–CR(L), 04–23440CR(CON).**

United States Court of Appeals, Second Circuit.

Argued: Nov. 9, 2004.

Decided: Aug. 4, 2005.

Filed: Sept. 2, 2005.

Decided: Nov. 18, 2005.

Steven Jay Harfenist, Friedman, Harfenist, Langer & Kraut, Lake Success, NY, for Defendant–Petitioner Martin.

Richard B. Schwartz, Schwartz & Grodofsky, P.C., Mineola, NY, for Defendant–Petitioner Coreas.

Bonnie S. Klapper, Assistant United States Attorney (Roslynn R. Mauskopf,

United States Attorney for the Eastern District of New York, Cecil C. Scott, Assistant United States Attorney, on the brief on appeal, Brooklyn, NY), for Respondent in Martin.

James E. Tatum, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Cecil C. Scott, Assistant United States Attorney, on the brief on appeal, Brooklyn, NY), for Respondent in Coreas.

Denied. Judge WESLEY concurs in a separate opinion and Judge POOLER dissents in a separate opinion.

## ON PETITION FOR REHEARING IN BANC.

WESLEY, Circuit Judge, concurring in denial of rehearing in banc.

I concur in the denial of rehearing in banc in *United States v. Martin*, 426 F.3d 68 (2d Cir.2005), and *United States v. Coreas*, 419 F.3d 151 (2d Cir.2005). I write only to prevent a potential misconception about the nature of *Martin* and its implications.[1]

Contrary to the dissent's suggestion, this case is not about an accidental tourist who while casually surfing the internet stumbles upon a website with a "few clicks of a mouse."[2] Rather, this case is about a man who visited a Yahoo! e-Group entitled "girls12–16," saw the e-Group's sexually explicit welcome message—which clearly announced its predominantly illegal purpose—affirmatively joined the e-Group, and remained a member of that e-Group for two weeks until it was shut down.

The explicitness of the welcome message belies any suggestion that a reasonable viewer would not realize that the "girls 12–16" e-Group was a forum for illegal and constitutionally-unprotected activity including downloading child pornography and receiving child pornography via e-mail:

Hi all, This group is for all those ho [sic] appreciate the young female in here [sic] finest form. Watching her develop and grow is like poetry in motioon [sic], to an age where she takes an interest in the joys and pleasures of sex. There is probably nothing more stimulating than watching a young teen girl discover the pleasures of the orgasm. The joy of feeling like she is actually coming into womanhood. It's an age where they have no preconditions about anything, just pure opennes [sic]. What a joy to be a part of that wonderful experience and to watch the development of this perfect form. This is the place to be if you love 11 to 16 yr olds. You can share experiences with others, share your views and opinions quite freely without censorship. You can share all kinds of other information as well regarding your current model: if you are a photogra-

---

1. The *Coreas* panel felt constrained by *Martin,* see *Coreas,* 419 F.3d at 159, and *United States v. Coreas,* 426 F.3d 615, 616 (2d Cir.2005) (denying petition for rehearing), even though the welcome message from the "Candyman" e-Group at issue in *Coreas* significantly differed from the welcome message from the "girls12–16" e-Group at issue in *Martin,* and even though the *Martin* panel explicitly suggested this distinction as a basis for distinguishing the cases in its denial of rehearing. See *United States v. Martin,* 426 F.3d 83, 85–86 (2d Cir.2005). We do note however that

the only other circuits to have considered the same affidavit as *Coreas* did find probable cause for issuance of the search warrant. *See United States v. Froman,* 355 F.3d 882, 891 (5th Cir.2004); *United States v. Hutto,* 84 Fed. Appx. 6, 8 (10th Cir.2003) (unpublished).

2. It bears mentioning that, in the internet era, *many* crimes can be committed with just a few clicks of a mouse, including the downloading of child pornography—the crime at issue in this case.

pher. Where the best place to meet gitls [sic] is. The difficulties you experience in your quest. The best way to chat up. Good places to pick girls up. Girls you would like to share with others. The choice is all yours. Welcome home! Post videos and photographs ... and how about your true life experiences with them so that other viewers can paint a mental picture andin [sic] some ways share the experience with you. You could connect with others from the same country as you and get together sociall [sic] if you wish. The choice is all yours. How about a model resource for photographers? It's all up to you and is only limited by your own imaginations. Membership is open to anyone, but you will need to post something. Mybe [sic] a little bit about yourself/what your interests are (specifically), your age, location ... and a pic or vid would be good to [sic]. By doing this other members (or potential members) with the same interest may then contact you if you wish them to.

*United States v. Martin,* 426 F.3d 83, 85 n. 1 (2d Cir.2005) (quoting J.A. 52–53 ¶ 31).

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In this case, the redacted affidavit established:

(1) "that individuals that sought membership in the e-group were presented with the name of the group and its detailed welcome message" [*see* J.A. 52–53 ¶ 31];

(2) "that members of the e-group were actively uploading and downloading

child pornography on the site and exchanging e-mail with illicit attachments" [*see* J.A. 51 ¶ 29 (citing J.A. 48–49 ¶ 25) ];

(3) "that a large majority of the text-only e-mail was generated automatically as a means to inform members that new child pornography had been uploaded onto the site" [*see id.*]; and

(4) "that an e-mail address associated with Martin's household (Joeym@ optonline. net) was enlisted and remained on the membership rolls until the group was suspended by Yahoo!" [*see* J.A. 56–57].

*Martin,* 426 F.3d at 87. Thus, this case is not about "a passing curiosity," mere "guilt by association" or "search[ing] the homes of innocent individuals." *See infra* at 76. Martin saw the welcome message's invitation—an invitation that clearly and unambiguously indicated that children were being sexually exploited by adults through the exchange of child pornography. Martin then actively accepted this invitation by affirmatively joining the e-Group. As a result, there was a fair probability that contraband or evidence, fruits, or instrumentalities of a crime would be found at the premises where Martin's computer was used to access the girls12–16 site. *See Martin,* 426 F.3d at 87.

POOLER, Circuit Judge, dissenting.

## ON PETITION FOR REHEARING IN BANC

I respectfully dissent from the denial of rehearing in banc in *United States v. Martin,* 426 F.3d 68 (2d Cir.2005), and *United States v. Coreas,* 419 F.3d 151 (2d Cir. 2005), because I believe the precedent set by *Martin* is dangerous and will have far reaching consequences, a concern I know

is shared by many of my colleagues.[3]

Once the false information is removed from the affidavit supporting the request for a search warrant, the only remaining allegations about the defendants before the magistrate were that they visited a website on which they could have engaged in both legal and illegal activity, clicked past a welcome message indicating that the website catered to people sexually interested in children, and then failed to remove their email address from the website. None of these activities in and of itself was illegal. Thus there was no allegation that the defendants committed any crime, nor was there sufficient information to allow a reasonable magistrate to conclude that there was a fair probability that they possessed fruits or instrumentalities of any crime. Because legislatures, and not courts or community sentiment, define what is illegal, the moral repugnance we experience in reaction to all sexual interest in children does not make these websites wholly illegal. Therefore, the fact that the defendants visited them cannot support the inference that they committed the narrow crime at issue here, downloading illegal visual depictions. *See* 18 U.S.C. § 2252A.

"The long-prevailing standard of probable cause protects 'citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime,' while giving 'fair leeway for enforcing the law in the community's protection.'" *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). "[P]robable cause to search ... exist[s] where the known facts and circumstances are sufficient to warrant a man of reason-

able prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In addition, probable cause must be based on particularized information about the specific person or place searched, not on "mere propinquity" to illegal activity. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *see also Pringle*, 540 U.S. at 371, 124 S.Ct. 795.

The alarming principle for which *Martin* stands (and which *Coreas* follows by constraint) is that the government may rely solely on a weak association with an organization engaged in both legal and illegal activity to find probable cause to search an individual's home. This type of guilt by association is unprecedented in the law of this circuit and has been explicitly rejected by the Supreme Court. *See Ybarra*, 444 U.S. at 91, 100 S.Ct. 338. This new rule may have far reaching consequences. Anyone who visits the website of a group that sometimes uses that site to facilitate illegal activity would be subject to search. This would include anyone who visits the websites of myriad political protest groups, from anti-abortion to anti-war, that at times engage in illegal activity.

In addition, the association on which probable cause in this case was based is slight. One of the "practical considerations of everyday life," *Ornelas*, 517 U.S. at 695, 116 S.Ct. 1657, in the information age that must be taken into account in assessing probable cause is the ease with which individuals today can use the internet to explore or associate with a large

---

**3.** There have already been six opinions in these cases. In addition to the majority and dissenting opinions in *United States v. Martin*, 426 F.3d 68 (2d Cir.2005), and the unanimous opinion in *United States v. Coreas*, 419 F.3d 151 (2d Cir.2005), both panels denied rehear-

ing by opinion, again with a majority and dissenting opinion in *United States v. Martin*, 426 F.3d 83 (2d Cir.2005), and a unanimous opinion in *United States v. Coreas*, 426 F.3d 615 (2d Cir.2005).

number of activities or organizations in which they may have no more than a passing curiosity. This increases the risk that the government can use the rule announced in *Martin* to search the homes of innocent individuals.

I would not dissent after being on the losing side of an in banc poll if I did not believe that the decision in *Martin* sets a perilous and plainly wrong precedent. Even if it were possible, we cannot wait for *Martin* to be limited on a case-by-case basis because the potential infringement on the rights guaranteed by the First and Fourth Amendments during the interim period is simply too great. *See Coreas*, 426 F.3d at 616 (rejecting the suggestion that *Coreas* can be distinguished from *Martin*). I urge the defense attorneys in these cases to seek certiorari, and, in the meantime, I caution the residents of New York, Connecticut, and Vermont to be careful which websites they visit because a few clicks of a mouse could subject their homes to search.